May it please the Court, Philip Lindsay appearing on behalf of defendant prison officials. Your Honors, presented before this Court is a narrow legal issue. The plaintiffs in this case have already conceded below and on appeal that the Prison Litigation Reform Act, which limits fees for attorneys, not only applies which limits fees in prisoner civil rights cases, not only applies to attorneys but also applies to fees incurred for paralegal services. Therefore, the narrow issue before this Court is the maximum amount of paralegal fees that may be awarded under the PLRA. The plain language of the PLRA, Congress's intent in adopting the PLRA, and existing Ninth Circuit authority, concludes that fee awards for paralegal services are limited to no more than 150% of what an attorney can seek for paralegal fees in the Northern District appointed under the CJA. When I tried to walk through all the steps, I felt there was a step missing to where we got to the paralegal fees as stated in Northern District California's plan. And in particular, my concern was that the PLRA itself says that the attorney's fees are, you know, 150% of the hourly rate established under 3006A for court-appointed counsel. So it specifically refers to whatever the rate is set for the court-appointed counsel. There's not a word about any separate fee structure for paralegals. So help me just walk through on sort of a step-by-step basis how we get to the Northern District's plan and what it says about paralegals. Referring to the language of the PLRA in that it refers to court-appointed counsel under the CJA, when counsel appointed under the CJA seeks their compensation, they seek their compensation both for their services and for the services of their attorneys. So the language under the PLRA that refers to compensation for court-appointed counsel also includes paralegal services. We know this to be true because 20 years earlier, the Supreme Court in Missouri v. Jenkins in interpreting Section 1988 for fees in civil rights cases made the determination that the phrase attorney's fees automatically includes separately billed paralegal fees. The Supreme Court reinforced that principle a few years ago in Richland v. Chertoff in interpreting another statute under the Equal Access to Justice Act, and there the Court emphasized its ruling that the phrase attorney's fees means both attorney's fees and separately billed paralegal fees. So what Congress has done in the PLRA is to set a benchmark based on fees that an attorney can seek appointed under the CJA. And under the CJA, the Judicial Conference of the United States is authorized to set those fees. In this case, the Judicial Conference has delegated that authority to the district courts in its operation of the CJA. And in this case, Northern District Court of California has, in fact, set a separate rate for paralegal fees for an attorney under, appointed under the CJA. That's the correct benchmark that the Court should use in order to determine what the maximum allowable fee is under the PLRA. So if I'm understanding correctly, you're saying that we should read that sentence in the PLRA referring to court-appointed counsel as meaning court-appointed counsel, established for court-appointed counsel and for paralegals billed separately? Is that — am I understanding you correctly? Yes, Your Honor, although I don't think the Court needs to read into the PLRA that additional language, because the Supreme Court has already determined seven years before the PLRA was enacted that attorney's fees equals paralegal fees and attorney's fees. So the additional language that's suggested by plaintiffs that needs to be read into the language simply isn't there and doesn't have to be there, because we already know that paralegal — that attorney's fees also include separately billed paralegal fees. In this case, the Northern District Court's order exceeded the allowable limit under the PLRA because it ignored the separate — the separate paralegal fees that were held at the same rate that applies to attorneys, which in 2008 was almost $170 an hour. At that rate also applies to paralegal fees. And there the Court erroneously concluded that the argument being put forth today would somehow engraft upon the PLRA the entire scheme of the CJA, and that simply is not the case. For years, ever since the PLRA has been enacted, courts have determined what the appropriate rate is for attorney's fees. And the Ninth Circuit in Webb v. Ada County has determined that under the PLRA, it's the judicial conference who is authorized to set what that appropriate rate here. So I thought that the judicial conference said that the paralegal services are reimbursable at a rate that may not exceed the lesser of the rate paid to counsel or essentially market rate. And the Court here found that the rate that was being charged was under the market rate for paralegals. So wasn't that billing amount consistent with the judicial conference? Or are you saying that it doesn't matter because of the further guidance given by the Northern District? It was not consistent with the judicial conference because the judicial conference delegated its authority to set separate paralegal rates to the Court, which the Northern District did, and only set a guideline that whatever rate that the district courts adopt for paralegal services, it should not exceed the rate that's being paid to attorneys under the Act. Therefore, in a district in which they have actually taken the authority that was delegated to them by the judicial conference to set a rate, that's the benchmark that should be used to determine the fees under the PLRA. You don't stop it at that particular level because it's simply a guideline to the district courts as to the appropriate amount of fees that it can authorize under the CJA. But it's clear that the PLRA requires, and this Court's precedent under Webb requires that the PLRA benchmark be based on whatever the judicial conference authorizes. And in this case, the judicial conference expressly authorizes the district courts to adopt a separate rate. Because paralegal fees are assumed within attorney's fees, therefore, you have Congress delegating the authority to set rates through the PLRA to the judicial conference and the judicial conference delegating that authority down to the Northern District courts. If the Northern District courts had not adopted a separate rate for paralegals under the CJA, then in this instance, the superior court's order would have been correct. But that's not the case here because the authority that the judicial conference had vested in the district court was enacted and a separate rate for paralegal fees was actually established. If there are no further questions, Your Honor, I would like to reserve the remaining remainder of my time for rebuttal. I have one question. It's sort of a theory point on which I'm a bit uncertain. Is there a separate challenge to the reasonableness of the paralegal fees in this case, or is the challenge based only on the failure to apply like the standards from the CJA? The challenge, Your Honor, is based solely on the limits imposed by the PLRA. Therefore, by necessity, because the argument is the superior the district court issued an order in excess of the amount allowable under the PLRA, then per se, the rate that was issued was unreasonable because it did exceed the maximum allowable rate under the PLRA. Right. But apart from the rate that's specified within the PLRA, there's no separate challenge to reasonableness? In other words, is it agreed that the rates charged for the paralegals are less than the market rates? Your Honor, defendants don't dispute that the paralegal, the cap under the PLRA for attorney's fees, the $169.50 per hour that the district court imposed, there's no dispute that that amount is less than what the market value is for paralegal services in the San Francisco area. Okay. Thank you. Thank you. Good morning, Your Honors. As the counsel before me expressed, the issue here is whether or not the PLRA sets a separate cap for paralegal rates. And the answer is that it does not. As the Court below correctly found, the statute, the plain language of the statute states that there is a single rate cap, and that rate cap is based on the rate that the CJA establishes for attorney's fees. And the maximum rate established for attorney's fees under the CJA when the CJA was written was $75. The CJA also authorizes the judicial conference to raise that rate based upon adjustments of rates of pay under the general schedule. And so that established rate has risen, and for the relevant period, it was $113. So opposing counsel says we have to read the PLRA and that language about court appointed counsel in light of Ms. Irvie Jenkins and Richland, and to say that that would extend to paralegal fees along a separate track. Why is that wrong? It's misguided. The statement in the statute is extremely clear. It says that attorney's fees, which we all agree include paralegal rates, are to be based upon 150 percent of the rate that is established by the judicial conference for payment to court-appointed counsel. The judicial conference establishes only one rate, and that rate is for court-appointed counsel. The judicial conference does not establish any rates for paralegals. The judicial conference under the CJA is authorized to set guidelines for payment to both counsel and to paralegals. But as far as establishment goes, there is the amount, which is $75, which is established, and then there is the authorization to raise that amount. And the judicial conference has raised that amount. In 2002, it was raised to $113. That's what the amount was again in 2008. So there is but one rate. The very clear and unambiguous language of the PLRA refers to one rate, and it refers to court-appointed counsel. There is no language in any Supreme Court case that says a reference to court-appointed counsel necessarily means court-appointed counsel and the paralegals who work for them. There is extensive court authority that shows that attorneys' fees, that term means both attorneys' fees and paralegal fees. So I just want to be sure you're saying that paralegals get reimbursed for paralegals at the same rate as for attorneys. Is that what you're arguing? It occurs, as it has in this case, that the attorney rate has remained the same from 2002 to 2008. There has been no rise. Then the market rate in this case did bump up against the rate that is paid to attorneys, so that the result was in 2008 that the effective amount that was paid to paralegals and attorneys was capped at the same level. Since then, the Judicial Conference has raised the rate for attorneys and for our office that is no longer the case. The attorney's rate is now higher than the paralegal market rate that we charge. So in Missouri v. Jenkins, in those cases, there was indication that the paralegal rate couldn't be higher than market rate, what was reasonable, essentially, market rate. And so you're not arguing that paralegals are entitled to the attorney's rate. You're just saying that the district court didn't err here in providing that much because it was under the market rate at that time. Am I understanding that correctly? That's correct, Your Honor. Under the circumstances of this case, we had gotten to a point where the cap, which had not changed for six years, was coextensive with the rate that our office charges for paralegals. Now, the construction that the defendants propose is actually, it contravenes the Ninth Circuit authority in the case Webb v. Ada County. And in Webb v. Ada County, the court below found that the relevant rate in determining the benchmark was the amount that was actually paid to counsel in Idaho. And this court determined, no, there is an amount that is paid to counsel. That is separate and apart from the amount that is established by the judicial conference as the rate of payment. And the court, the Sixth Circuit Court, examining the same question, came to the same conclusion that the amount that is paid to counsel is actually based on appropriations made by Congress to pay CJA counsel. That amount may differ from the established rate by the judicial conference. And so it is the rate that is established by the judicial conference that sets the benchmark and not the rates that are set forth in guidelines for payment and the actual payment that ends up going to the CJA counsel in those cases. And so, and the reason for that is that once the judicial conference sets a rate, Congress still has to approve the package of appropriations that will pay CJA counsel. And the court in Hadex in the Sixth Circuit noted that it is irrelevant how much CJA, or Congress appropriates to pay CJA counsel because payment for, in these cases, does not come out of the CJA money. The payment comes from the defendants who lost the case because they failed to provide constitutional rights. The proposal that defendants have made to, in this, in the Northern District, base fee recovery for paralegals is actually a radical departure from the market-based approach that the Supreme Court has consistently taken in compensating successful civil rights litigants. So in Hensley v. Eckerhart and Blum v. Stetson, the Supreme Court made clear that recovery and civil rights actions should be based on market rates and not on cost of the litigation to the attorneys. Now, in 1996, the PLRA made one adjustment to that for prisoner rights civil rights actions in which the prisoners are successful. And so it set a single cap. But in Richland in 2008, Justice Alito wrote for a unanimous court stating there where the defendants sought to tie the recovery for paralegal rates to the cost to the attorneys, Justice Alito wrote that relying on market practice to compensate paralegals provides a far more transparent basis for calculating the prevailing party's recovery. And Justice Alito further wrote that, quote, it strains credulity that Congress would have abandoned this predictable, workable framework for the uncertain and complex accounting requirements that a cost-based rule would inflict on litigants, their attorneys, administrative agencies, and the courts. What does market rates mean? Market rate means the rate that you would charge a paying client and would be able to operate. In this case, the court below looked at data supplied by the parties, supplied by the plaintiffs, that demonstrated that the market rate for paralegals is roughly $200 an hour for 2008. And, in fact, the court made the factual finding that our rate was below that. And so that finding would be subject to the clear error standard. The court's finding that that was reasonable would then be subject to an abusive discretion standard. This court explained in Webb that Congress's goal in passing the PLRA was to reduce litigation costs associated with prisoners' rights cases. And in that case, this court explained that the PLRA should not be interpreted in a way that would increase litigation over fees. And, indeed, what the defendants are asking this court to do, to calibrate fees in the northern district based upon the individual paralegal's salary plus his or her employer's basic benefits, using that as the basis, is an invitation for more litigation. Is that what the northern district plan is doing? Because as I understand the argument, they're saying the judicial conference delegated the guidelines, I guess, for determining paralegal fees to the northern district, and they put out this guidance, and it sets separate rates for counsel and paralegals. There is a sort of intuitive appeal to say paralegals shouldn't be making as much as the lawyers are, and here the northern district has determined what's an appropriate rate for paralegals. Why would that engender more litigation? Because the value of the paralegal's salary plus employer-based basic benefits is not clear. Is that what the northern district is basing their guidelines on? That is what their guideline is. And so there is no definition of employer-paid basic benefits. There is no explanation, for example, whether, for example, at our office where we pay medical benefits to both the employee and his or her family, what would be the value of that payment? Would the employee's full health package be counted as the basic benefit or simply the benefit to him or her? We also provide parental leave for when parents, when people have children, when they have babies. Does that count as an employer-based benefit if the person hasn't availed themselves of it, or does it count only if they have, and what value do you put on that? That is what will engender litigation in the northern district. But doesn't that, doesn't the law firm actually engage in that exercise before it determines what it's going to charge a client? Well, they do, and they also assess... In other words, if I understand it correctly, and I recall from my law firm days, you want to make a profit on your paralegals. The way you weigh the pay and you decide what profit you're going to make, and you determine how much in order to decide what profit you're going to make and how to set your rates, you're going to basically engage in an exercise similar to what you've just described. You're going to figure out, well, what is the base pay? What are fringe benefits? And then when you get to that calculation, and you may set aside a certain amount for overhead. I don't know. Way back when I was in practice, the rule of thumb was that if an associate was billed at $150 an hour, it was $50 for overhead, $50 for profit, and $50 to pay the associate. So essentially, the law firm engages in that before it sets what's called the market rate. Your Honor, I believe the market rate is set by the market. The market determines whether or not it's worthwhile to employ people, and each individual law firm will look at the cost effectiveness of employing paralegals and determining whether the rate that the market has reached for that person makes it financially viable to hire that person and use that person. I know, but however you go about it, in the end, however the market, which is, let's say, a collection of law firms, sets the rate, they're basically going to first sit down and determine, well, how much is this paralegal costing us, and then how much can we get given, you know, that we're in a competitive business, let's say. How much can we get above that so that we make a profit on the paralegal? That is likely to go into the calculus, and as you said, there is also the cost of overhead. The proposal that the State makes does not include overhead for the actual cost of the paralegal. So what the Court found below was that our fees were reasonable, that they were below market rate, and that they are reasonable, and that reasonableness decision is entitled to abusive discretion standard of review. To the extent that the defendants have argued that PLRA requires the application of the guidelines that are promulgated pursuant by the Judicial Conference and any northern district, any district court, that's a question of law, and plaintiffs and plaintiff appellees contend that the court below was correct in deciding this case. Thank you, Your Honor. Thank you. Your Honor, I just have a few remaining remarks. First, with respect to counsel's argument that there's no language in the PLRA that discusses paralegal fees, there's also no language in the CJA that discusses paralegal fees. There's also no language in the Equal Access to Justice Act that discusses paralegal fees, yet we know the Supreme Court, in interpreting that statute, has stated that the phrase attorney's fees also includes separately billed paralegal fees. Now, opposing counsel says, well, that may be the case for the word attorney's fees, but the PLRA references court-appointed counsel, which the Supreme Court hasn't specifically addressed, and that is the standard by which we do determine attorney's fees, which include paralegal fees. So why should we interpret the phrase court-appointed counsel as separately billed paralegal fees? Because, Your Honor, court-appointed counsel is the same thing as saying attorney's fees. It's basing – it's attempting to set a benchmark for what those attorney's fees will be based on what court-appointed counsel can receive under the CJA, which we know includes both attorney's fees and paralegal fees. So it would be consistent with Supreme Court precedent to interpret that language in the PLRA to mean the same thing as attorney's fees, which includes paralegal fees. Additionally, counsel argued that the defense's argument today is taking a radical departure from the market-based approach. Congress did that in 1996 with passage of the PLRA. Specifically for prisoner's civil rights cases, it was the intent of Congress to limit the amount of fees that were awardable. The PLRA works in tandem with Section 1988. Therefore, prevailing plaintiffs in prisoner's civil rights cases can seek fees under Section 1988, but only so long as they don't exceed the maximum cap placed on those fees under the PLRA. This specifically was Congress's intent. The argument that defendants are putting forth today is consistent with that, to relieve the taxpayers of the burden that the public has to endure because of prisoner's civil rights lawsuits. Also, I wanted to state that counsel argued that the position taken today by the defendants does not account for additional costs of paralegals, such as overhead. In the amicus brief, this argument is also made, that it doesn't they would not be able to fully be compensated for the cost of their paralegals. What they don't address, however, is the fact that under the PLRA, it attaches a 1.5 multiplier to what that cost is. So, for instance, the median salary for a paralegal in the San Francisco area is $95,000 a year. They could then seek $95,000 a year, which is the base cost, excuse me, plus a 1.5 multiplier, which means they would be able to seek fees of $142,000 a year to cover that paralegal's salary of $95,000 a year. That's over $47,000 more than the base salary. Plaintiffs and amicus don't address this point in their arguments. Here, the PLRA has struck a balance between needing to relieve taxpayers of the burden of these types of cases with an appropriate fee under the PLRA in these types of cases, which is why they added the 150 percent multiplier to what an attorney can seek under the CJA. Of course, that applies both to paralegals as well as to attorneys' fees. In this case, Your Honors, because the district court failed to take into consideration that rate that was adopted by the Northern District pursuant to the Judicial Conference's Thank you. Thank you. Okay. The case of Perez v. Kate is submitted.
judges: Korman, Hall, Gould